# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | |
|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date  July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present      Not Present

**Proceedings:** **(In Chambers) ORDER Granting in part and denying in part the Quizno's Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted**

Before this Court is the Quizno's Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted. The Court heard oral argument on the motions on July 30, 2007. Then, the Court found the matter appropriate for decision without further oral argument. Fed. R. Civ. P. 78; Local R. 7-15.

I.    INTRODUCTION

Gibson & Company Insurance Brokers, Inc. ("Plaintiff") has brought a class action suit, on behalf of itself and others similarly situated, against numerous entities, most of whom are related to the Quizno's Corporation.[1] Plaintiff alleges that the named defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited facsimile advertisements to Plaintiff and the putative class. More specifically, Plaintiff alleges that it received two identical facsimiles (the "Fax") on November 1, 2005 from the defendants. The Fax promoted a "2 for 1" deal on certain Quizno's products and a different deal on other

---

[1] Specifically, Plaintiff is maintaining the current action against the following seventeen defendants: Defendant QFA Royalties LLC ("QFA"); Defendant Quizno's Franchising II LLC ("QF II"); Defendant QIP Holder LLC ("QIP"); Defendant TQSC II LLC ("TQSC II"); Defendant TQSC LLC ("TQSC"); Defendant Growth Partner LLC ("Growth Partner"), Defendant National Marketing Fund Trust ("National Trust"); Defendant Regional Advertising Trust ("Regional Trust"); Defendant QAFT, Inc. ("QAFT"); Defendant American Food Distributors LLC ("AFD"), Defendant The Quizno's Franchise Company ("TQFC"); Defendant The Quizno's Master LLC ("TQM"); Defendant QCE LLC ("QCE"); Defendant Quizno's Franchising LLC ("QF"); Defendant Continental Lending Group LLC ("CLG"); Defendant Premiere Global Services, Inc. ("Premiere"); and Defendant Xpedite Systems LLC ("Xpedite").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 06-5849 PSG (PLAx)                             Date   July 31, 2007

Title   Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al.

Quizno's products. Plaintiff alleges that the defendants' transmittal of the Fax constitutes a violation of 47 U.S.C. § 227 and that Plaintiff believes that Defendants sent or caused to be sent at least 126,091 facsimile transmission of the Fax in violation of the TCPA.

On August 10, 2006, Plaintiff filed this suit in California state court. The defendants removed the action to federal court on September 14, 2006. On June 29, 2007, certain defendants filed the Motion currently before the Court.[2] These defendants move to Dismiss Plaintiff's Second Amended Complaint ("SAC") on the grounds that Plaintiff has failed to state a claim upon which relief can be granted.[3] See Fed. R. Civ. P. 12(b)(6). Plaintiff opposes Defendant's request.

The Court GRANTS IN PART and DENIES IN PART the Quizno's Defendants' Motion to Dismiss.

II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a mechanism for a party to dismiss a claim if the claimant fails to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules generally require only that the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Nevertheless, even though a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted). Rather, the complaint must allege sufficient facts to raise a right to relief above the speculative level. See id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Also, in deciding a 12(b)(6) motion, a court must accept as true all factual allegations in the complaint, see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), and views these allegations in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

---

[2] All defendants join the current Motion except for Defendants TQSC, Growth Partner, Premiere, and Xpedite. As these defendants do not join the current Motion, the Court's following analysis does not include them.
[3] As used herein, all defendants who bring the current Motion are referred to as the "Quizno's Defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 06-5849 PSG (PLAx)                        Date   July 31, 2007

Title      Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al.

III.   STATUTORY FRAMEWORK

In 1991, Congress enacted the TCPA in response to various telemarketing practices arising out of the use of "autodialers" to generate millions of automated telephone calls. S. Rep. No. 102-178, at 2-3 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1969-71. As relevant here, the TCPA makes it unlawful "for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise. Id. at § 227(a)(5).

The TCPA provides for an explicit private right of action to enjoin violations of § 227(b) and the regulations promulgated under that subsection, and to recover actual damages or $500 – whichever is greater – for each violation, or both. Id. at § 227(b)(3)(A). It also provides for treble damages for willful or knowing violations. Id. at § 227(b)(3).

The FCC is authorized to promulgate regulations to implement the TCPA. Indeed, § 227(b)(2) requires the FCC to "prescribe regulations to implement the requirements of this subsection." By the same token, § 227(d)(2) requires the FCC to

> revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after the date of enactment of this section clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual.

In 2005, Congress amended the TCPA with the Junk Fax Prevention Act ("JFPA"). The JFPA provides an "established business relationship" statutory exemption. This exemption permits the transmission of unsolicited facsimile advertisements to recipients with whom a "sender" has an established business relationship. 47 U.S.C. § 227(b)(1)(C).[4]

---

[4] To assert this exemption, the defendant "sender" must show that: (1) the defendant "sender" had an "established business relationship" with the recipient, (2) the defendant "sender" had obtained the number of the telephone facsimile machine through the voluntary communication of such number, within the context of such established business relationship, from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 06-5849 PSG (PLAx)                                Date   July 31, 2007

Title   Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al.

## IV. DISCUSSION

The Quizno's Defendants' Motion to Dismiss rests primarily on two grounds. First, Defendant argues that the SAC fails to allege facts to support a claim of primary liability under the TCPA against any of the Quizno's Defendants in their individual capacities. (Motion, at 8-19). Second, Defendant argues that Plaintiff insufficiently pleads agency liability in the SAC. (Id. at 20-21). Plaintiff opposes the Quizno's Defendants Motion to Dismiss on two separate grounds.[5] First, Plaintiff argues that each Quizno's Defendant is an independently liable "sender" of the Fax. (Opposition, at 9-15). Second, Plaintiff argues that agency law and vicarious liability establish legal accountability throughout the entire corporate network identified in the SAC. (Id. at 18-23). Each of these arguments is addressed below.

### A.   FRCP 12(b)(6) Analysis as it Applies to Defendants National Trust, Regional Trust, TQFC, and QAFT in its Individual Capacity

A threshold issue to any lawsuit is, of course, whether a defendant lacks the capacity to be sued. Accordingly, this Court first addresses the Quizno's Defendants' argument that Defendants National Trust and Regional Trust (collectively "Defendants Trusts"), Defendant TQFC, and Defendant QAFT – in its individual capacity – lack the capacity to be sued.

#### 1.   Whether Plaintiff Sufficiently States a Claim Against Defendants National Trust and Regional Trust

According to Plaintiff, Defendants Trusts are administered and controlled by the other Quizno's Defendants, and monies from the Defendants Trusts "are used to create, produce, and place advertising and promotional materials such as the Fax." (SAC, at ¶¶ 14-15). Moreover, Plaintiff alleges that Defendants Trusts "formulated and executed the advertising campaign that resulted in the sending of the Fax; prepared the Fax, including its content; contracted to purchase the Fax List and paid for the Fax list; and paid for the services of [Defendant] Premiere." (Id. at ¶¶ 14-15).

---

recipient of the unsolicited advertisement or from "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution," or possessed the number prior to July 9, 2005; and, (3) the facsimile complies with the notice requirements to be prescribed by the FCC. See id.

[5] The Court notes that in its Opposition Plaintiff argues that the "single enterprise" rule prevents the Quizno's Defendants from using the opacity of its corporate structure to escape liability or to apportion liability. (Id at 23-24)  As Plaintiff never pleaded this theory in its SAC, the Court refuses to entertain the legal sufficiency of this claim. The Court also notes that an Opposition is not the proper vehicle to request permission to amend a complaint  See (Opposition, at 24 n 23)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

Defendants seek to dismiss Plaintiff's claims against Defendants Trusts on the grounds that under California law a trust is not a legal entity subject to suit. (Motion, at 9-10). Although Plaintiff raises many arguments in opposition to the Quizno's Defendants' Motion to Dismiss, not one of Plaintiff's arguments specifically addresses this ground for dismissal. Rather, Plaintiff maintains that as a result of each defendant's "own role" in the Fax, each Defendant is liable under the TCPA. (Opposition, at 9-18 (describing each Defendant's "Role in the Ad")).

Under California law,[6] a trust is not a legal entity subject to suit. Galdjie v. Darwish, 113 Cal. App. 4th 1331, 1344, 7 Cal. Rptr. 3d 178 (2003); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, at ¶ 2:126 (citations omitted). Rather, it is simply a collection of assets and liabilities. See Weil & Brown, at ¶ 2:126. "As such, it has no capacity to sue or be sued, or to defend an action." Id. Consequently, any litigation must be maintained against the executor or administrator of the estate. Id.; see also Galdjie, 113 Cal. App. 4th at 1344; Tanner v. Best, 104 P.2d 1084, 1086 (Cal. 1940).

According to the SAC, Defendant QAFT "operate[s] [as] the trustee, administrator, or controlling entity of the National Trust and Regional Trust." (SAC, at ¶ 15). Therefore, Defendant QAFT, in its representative capacity, is the proper defendant on any claim arising out of the administration of the Trusts.

For these reasons, then, the Court GRANTS the Quizno's Defendants' Motion to Dismiss as it relates to Defendants Trusts, with prejudice.

   2.   Whether Plaintiff Sufficiently States a Claim Against Defendant TQFC

According to Plaintiff, "[Defendant] TQFC was at all relevant times the subscriber of the telephone number (1-866-4-TOASTED) advertised and promoted in the Fax." (SAC, at ¶ 17:16-17). Plaintiff also alleges that Defendant TQFC paid or contributed monies that were used by Defendants Trusts to: (1) formulate and execute the advertising campaign that resulted in the sending of the Fax; (2) to prepare the Fax, including its content; (3) to purchase and pay for the Fax List; and (4) to pay for the services of Defendant Premiere. (Id. at ¶ 17:23-27).

---

[6] The capacity of individuals and other entities to sue or be sued is governed by Federal Rules of Civil Procedure 17(b). It provides specific directives for (1) individuals, (2) corporations, (3) partnerships and other unincorporated associations, and (4) receivers appointed by a court of the United States As Defendants Trusts do not fall into one of these categories, Federal Rules of Civil Procedure 17(b) provides: "In all other cases [such as here] capacity to sue or be sued shall be determined by the law of the state in which the district court is held . ." Fed. R. Civ P. 17(b). Accordingly, this Court applies California law to resolve this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

The Quizno's Defendants argue that, as is the case with Defendants Trusts, Defendant TQFC is not subject to suit. (Motion, at 11:1-2). As was the case above, Plaintiff fails to address this ground for dismissal, and instead argues that Defendant TQFC's "own role in the Ad" makes it liable under the TCPA.

As the Quizno's Defendants correctly point out, under Delaware law,[7] "absent statutory authority, no claim may be brought against a dissolved entity." Metro Communc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121, 138 (Del. Ch. 2004). Moreover, under Delaware law, suit generally may not be brought by or against a limited liability company after the certificate of cancellation is filed. See 6 Del. C. § 18-803(b) (West 2007).[8] The difficulty Plaintiff faces in this matter is that Defendant TQFC no longer exists. As Plaintiff concedes that Defendant TQFC has been dissolved, (SAC, at ¶ 17), this Court therefore finds that Defendant TQFC lacks the capacity to be sued.

For these reasons, then, the Court GRANTS the Quizno's Defendants' Motion to Dismiss as it relates to Defendant TQFC, with prejudice.

---

[7] As before, Federal Rules of Civil Procedure 17(b) directs this Court to apply the law of the state in which this Court sits. See Fed. R. Civ. P. 17(b). While the capacity of a limited liability company is determined by the law of the forum state, see id., in California a "foreign limited liability company" (i e., an LLC formed under the laws of a state other than California) is recognized as such and the liability of its managers and members is governed by the laws of the jurisdiction under which it is organized. See Ballantine and Sterling, California Corporation Laws § 910.01; see also Cal. Corp. Code § 17450 ("The laws of the state . . . under which a foreign limited liability company is organized shall govern . . . the liability and authority of its managers and members.") Accordingly, since Defendant TQFC is formed under the laws of Delaware, Delaware law controls the outcome of this issue.

[8] 6 Del C. § 18-803(b) provides:

> Upon dissolution of a limited liability company and *until the filing of a certificate of cancellation as provided in § 18-203 of this title, the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits*, whether civil, criminal or administrative, gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, discharge or make reasonable provision for the limited liability company's liabilities, and distribute to the members any remaining assets of the limited liability company, all without affecting the liability of members and managers and without imposing liability on a liquidating trustee.

(emphasis added)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 06-5849 PSG (PLAx)                    Date:  July 31, 2007

Title     Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al.

    3.    Whether Plaintiff Sufficiently States a Claim Against Defendant QAFT in Its Individual Capacity

The Quizno's Defendants argue that because the SAC "does not allege any actions taken by [Defendant] QAFT outside its role as Trustee of the Trusts," it fails to state a claim against Defendant QAFT in its *individual* capacity. (Motion, at 11:13-14, 16-17). In opposition, Plaintiff contends that "the averments against QAFT are not limited to its capacity as a trustee" and that "[d]iscovery will ascertain QAFT's exact role in connection with the fax ad." (Opposition, at 5.n.5) (citing SAC, at ¶¶ 15, 39)).

Despite any arguments to the contrary, any and all allegations of unlawful conduct by Defendant QAFT reference Defendant QAFT acting solely in its *representative* capacity, rather than in its individual capacity. See (SAC, ¶¶ 13-17, 20-21, 39). Accordingly, this Court finds that the SAC fails to allege a cause of action against Defendant QAFT acting in its individual capacity.

For these reasons, then, the Court GRANTS the Quizno's Defendants' Motion to Dismiss as it relates to Defendant QAFT in its individual capacity, without prejudice.

    B.    FRCP 12(b)(6) Analysis as it Applies to Defendants TQSC II, QAFT in Its Representative Capacity, QCE, QFA, QF II, QIP, TQM, AFD, QF, CLG

As the Court has granted the Quizno's Defendants' Motion to Dismiss as it relates to Defendants Trusts, TQFC, and QAFT in its individual capacity, the Court next addresses whether the SAC sufficiently alleges claims against Defendants TQSC II, QAFT in its representative capacity, QFA, QF II, QIP, AFD, TQM, QCE, QF, and CLG. Ultimately, whether Plaintiff sufficiently pleads a claim against these defendants turns on the statutory meaning of the terms "send" and "sender."[9] According to Plaintiff, the "creator of the content" of an

---

[9] The TCPA provides that "it is unlawful . . . to send" via facsimile an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). The TCPA also creates an exception for "senders" who have an established business relationship with the recipient. See id. The TCPA does not, however, define the terms "send" or "senders."

    As an alternative basis of liability, Plaintiff alleges that "each Defendant was and now is the agent and/or representative of each remaining Defendant, and in doing the acts averred herein was acting within the scope of such agency and/or representation." (SAC, at ¶ 25). The Court agrees with Defendant that this mere conclusory allegation fails to satisfy the now heightened pleading standard under Twombly, which, contrary to Plaintiff's assertion, applies in this case. See Twombly, 127 S. Ct at 1959 (stating that a complaint must allege more than merely "labels and conclusions, and a formulaic recitation of the elements of a cause of the case of action"). This determination applies to all defendants in this Order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

unsolicited advertisement is liable under the TCPA. The Quizno's Defendants, by contrast, argue that liability under the TCPA is limited to "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted." Moreover, the Quizno's Defendants argue that this "on behalf of" language cannot be construed to encompass any and every entity which benefits, directly or indirectly, from the transmittal of an advertisement. To construe the TCPA in such a way, the Quizno's Defendants argue, would expand the scope of the TCPA beyond its statutory language.

   1. Statutory Construction

  In construing the TCPA, this Court is not without ample guidance. The interpretation of any act by the administrative agency overseeing that act is due great deference. Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971); Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The FCC has authority to enforce the TCPA and to "prescribe regulations implementing the requirements" of the TCPA. See 47 U.S.C. §§ 227(b)(2) and (f)(7). To this end, the FCC has issued broad sets of rules that respond to Congress' directives in the TCPA. As the TCPA is by no means a model in statutory drafting, the FCC has attempted to interpret certain statutory terms that Congress left undefined. Significantly, the FCC has attempted to define the term "send" and "senders," and, by logical extension, has attempted to define the scope of liability under the TCPA.

  The FCC has construed the TCPA to impose liability for the transmission of unsolicited advertisements on two types of "senders." As the Quizno's Defendants correctly point out, one type is fax broadcasters (i.e., facsimile service providers) who literally "send" fax transmissions. This interpretation comports with the plain meaning of the word "send" and, as the Court is not directed to any authority that compels it to hold otherwise, the Court agrees with this specific construction of the TCPA.

  The second category of "senders" identified by the FCC are (1) those who "create the content" of a fax that is sent in violation of the TCPA, see 12 F.C.C.R. 4609, 4613 (1997) ("We clarify that the sender of the message is the creator of the content of the message."), and (2) those "on whose behalf facsimiles are transmitted." 10 F.C.C.R. 12391, 12407 (1995).[10]

---

[10] The Court notes that Plaintiff also points to a 2003 FCC Report and Order, in which the FCC stated that a "fax broadcaster" is liable under the TCPA if there is a "high degree of involvement . . . such as determining the content of the faxed message." 18 F.C.C.R. 14014, 14131 (2003). As none of the Quizno's Defendants are alleged to be fax broadcasters, the 2003 FCC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
|---|---|---|---|
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

Recently, the FCC promulgated its first formal rules, in which it reiterated this latter definition. According to the FCC, "the 'sender' of the facsimile advertisement is the person on whose behalf the advertisement is sent." 71 Fed. Reg. 25967, 25971 (2006). The FCC further explained that "in most instances," the person or entity "on whose behalf" an advertisement is sent "will be the entity whose product or service is advertised or promoted in the message." Id.; see also 47 C.F.R. § 64.1200(f)(8);[11] 21 F.C.C.R. 3787, 3808 (2006).[12]

This Court notes that although the FCC has authority to enforce the TCPA and "prescribe regulations implementing the requirements" of the TCPA, see 47 U.S.C. §§ 227(b)(2) and (f)(7), Congress did not give the FCC complete power to determine who is liable under the statute. Nonetheless, while the Court is not bound by these FCC rulings and the agency interpretations contained therein, considerable deference is due to the agency in its area of expertise. See Chevron, 467 U.S. at 844. As the FCC's interpretation matches the language of the TCPA and its underlying purpose, this Court thus agrees with the FCC's interpretation of "send" and "senders." To interpret the TCPA otherwise would exempt those who "create the content" or those "on whose behalf" an unsolicited facsimile is sent, effectively allowing entities to make an end-run around the TCPA's prohibitions. Moreover, it has long been an accepted principle "that

---

Report and Order is inapposite.

[11] 47 C.F.R. § 64.1200(f)(8) provides:

> The term sender for purposes of paragraph (a)(3) of this section means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.

[12] In its 2006 Report and Order, the FCC stated, "We take this opportunity to emphasize that under the Commission's interpretation of the facsimile advertising rules, the sender is the person or entity on whose behalf the advertisement is sent." Id.

At the outset, it is necessary to clarify the scope of this Court's analysis. As noted above, prior to 2006, the FCC defined "sender" as those who "create the content of the message" or those "on whose behalf" an advertisement is sent. The Court also notes that beginning in 2006, the FCC began to define "sender" as the person "whose goods or services are advertised or promoted in the unsolicited advertisement." See e.g., 47 C.F.R. § 64.1200(f)(8). Both parties note that the Fax was sent in 2005, before 47 C.F.R. § 64.1200 became effective. As federal regulations do not, indeed cannot, apply retroactively unless Congress has authorized that step explicitly, Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988), and, as Congress has not authorized the FCC to adopt regulations that apply retroactively to the TCPA, this Court's legal analysis will be confined to those statutes and regulations that were in effect at the time the Fax was allegedly transmitted. That is, in this specific case the Court will not address liability based on this "whose goods or services" language. This does not mean, however, that the FCC's 2006 pronouncements do not inform this Court's analysis. For example, although the FCC has vacillated in its definition of "sender" over the past fifteen years, it has nonetheless consistently stated that a "sender" is a person or entity "on whose behalf" an advertisement is sent. See 10 F.C.C.R. 12391, 12407 (1995), 21 F.C.C.R. 3787, 3808 (2006), 47 C.F.R. § 64.1200(f)(8) (2006). Thus, while the 2006 FCC pronouncements and regulations are not binding on this Court, they are nonetheless persuasive.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 06-5849 PSG (PLAx)                             Date   July 31, 2007

Title      Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al.

Congress normally intends that its laws shall operate uniformly throughout the nation so that the federal program will remain unimpaired," Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 209, 66 S. Ct. 992, 90 L. Ed. 1172 (1946). Thus, this construction of the statutory language also ensures consistency of the federal scheme.

Therefore, for the purposes of this case, this Court concludes that those "senders" who are liable under the TCPA are those who "create the content of the message" or "on whose behalf" an advertisement is sent.[13] Having determined who is a "sender" for the purpose of TCPA liability, this Court must now determine whether Plaintiff has sufficiently pleaded that the remaining Quizno's Defendants are liable under the TCPA. That is, with the Court's conclusions regarding liability under the TCPA informing the following analysis, Plaintiff will only survive the Rule 12(b)(6) Motion if Plaintiff pleaded sufficient facts that demonstrate that the Quizno's Defendants "creat[ed] the content of the message" or are those entities "on whose behalf [unsolicited] facsimiles were sent."[14]

    2.    Whether Plaintiff Sufficiently States a Claim Against Defendant TQSC II

According to Plaintiff, Defendants TQSC II not only "formulated and executed the advertising campaign that resulted in the sending of the Fax," it also "prepared the Fax and its content." (SAC, ¶¶ 10-11). As the FRCP only requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), this Court finds that Plaintiff has sufficiently pleaded a set of facts to support a claim that would merit relief. Cahill, 80 F.3d at 337-38.

For these reasons, then, the Court DENIES the Quizno's Defendants' Motion to Dismiss as it relates to Defendant TQSC II.

    3.    Whether Plaintiff Sufficiently States a Claim Against QAFT in Its Representative Capacity

---

[13] As noted above, in this specific case the Court will not address liability based on the "whose goods or services" language found in the FCC's 2006 regulations and pronouncements.

[14] The Court notes that Plaintiff alleges that "[t]he Fax was sent or caused to be sent by the Quizno's Defendants by or through the Fax Broadcaster ... on the Quizno's Defendants' behalf." (SAC, at ¶ 4). The Court also notes that these conclusory allegations, by themselves, are not sufficient to survive a Rule 12(b)(6) Motion See Twombly, 127 S Ct. at 1965.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

According to Plaintiff, Defendants Trusts "formulated and executed the advertising campaign that resulted in the sending of the Fax" and "prepared the Fax, including its content." (SAC, at ¶¶ 13-14). Since Plaintiff also alleges that Defendant QAFT has "operated as the trustee, administrator, or controlling entity of the National Trust and Regional Trust," (id. at ¶ 15), the Court finds that Plaintiff has sufficiently pleaded a set of facts to support a claim that would merit relief.

For these reasons, then, the Court DENIES the Quizno's Defendants' Motion to Dismiss as it relates to Defendant QAFT in its representative capacity.

   4.  Whether Plaintiff Sufficiently States a Claim Against Defendant QCE

According to Plaintiff, "all acts or omissions of the Quizno's Defendants (except for Growth Partners) averred herein were committed by employees of American Payroll Company ("APC")...." (SAC, at ¶ 19). Plaintiff also alleges that Defendant QCE "is the successor to the rights and liabilities of APC...." (Id. at ¶ 19).

This Court has already determined that Plaintiff has sufficiently pleaded allegations to survive a Rule 12(b)(6) Motion as applied against Defendants TQSC II and QAFT. Since those acts committed by Defendants TQSC II and QAFT are alleged to have been committed by APC, it follows that Plaintiff sufficiently states a claim against APC. As Defendant QCE is allegedly the successor to the liabilities of APC, it also follows that Plaintiff sufficiently states a claim against Defendant QCE. While the SAC is not a model of clarity, the Court nonetheless determines that the allegations contained within it allow Plaintiff to survive a Rule 12(b)(6) Motion.

For these reasons, then, the Court DENIES the Quizno's Defendants' Motion to Dismiss as it relates to Defendant QCE.

   5.  Whether Plaintiff Sufficiently States a Claim Against Defendants QFA, QF II, and QIP

Importantly, Plaintiff does not allege that Defendants QFA and QF II "creat[ed] the content of the message." See (SAC, at ¶¶ 7, 8). Therefore, whether Plaintiff sufficiently states a claim against Defendants QFA and QF II turns on whether Plaintiff pleaded sufficient facts that demonstrate that the Fax was sent on their behalf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.  CV 06-5849 PSG (PLAx)                          Date  July 31, 2007

Title    Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al.

According to Plaintiff, Defendants QFA and QF II "received royalties from the sale at Quizno's Restaurants of Quizno's Products, including the Quizno's Products advertised and promoted in the Fax." (SAC, at ¶¶ 7, 8). Assuming that Defendants QFA and QF II did stand to benefit from royalties received in relation to the Fax's promotion, Plaintiff points this Court to no authority, nor did this Court come across any in its research, that indicates that receipt of royalties is by itself a sufficient basis for liability under the TCPA. As the Quizno's Defendants persuasively argue, for an advertisement to be sent on behalf of an entity, a party must not simply benefit from the advertisement. Rather, the advertisement must literally be sent "on behalf" of that entity. See 10 F.C.C.R at 12407; 71 C.F.R. § 64.1200(f)(8).[15] Absent any factual allegation that the Fax was literally sent "on behalf" of Defendants QFA and QF II, this Court finds these allegations pertaining to receipt of royalties insufficient to state a claim upon which relief can be granted.

As a second potential basis for liability, Plaintiff alleges that Defendant QIP is "the owner of the Quizno's IP, including all of the trademarks advertised and promoted in the Fax" and that it licenses or sublicenses this intellectual property to others. (SAC, at ¶ 9). According to Plaintiff, two of these licensees include Defendants QFA and QF II. (Id. at ¶¶ 7, 8).

The Quizno's Defendants correctly point out that the SAC merely alleges that these three defendants owned or held licensed rights to use trademarks that appeared on the Fax. Additionally, the Quizno's Defendants draw the Court's attention to other deficiencies in the SAC. For instance, not only does the SAC fail to allege that Defendants QIP, QFA, and QF II were involved in the creation or transmission of the Fax, the SAC fails to even allege that these defendants were aware that the Fax was sent. This Court is not persuaded by Plaintiff's argument that because the Fax promoted the Quizno's trademark, those who own or licensed that trademark should be held liable under the TCPA. Absent an allegation that Defendants QIP, QFA, and QF II were somehow involved in the decision to send the Fax, this Court refuses to find that the SAC sufficiently pleads liability under the TCPA as it relates to these defendants' actions. See Lary v. VSB Financial Consulting, 910 So. 2d 1280 (Ala. Civ. App. 2005).

For these reasons, then, the Court GRANTS the Quizno's Defendants' Motion to Dismiss as it relates to Defendants QFA, QF II, and QIP, without prejudice.

---

[15] There is nothing in the FCC's pronouncements or regulations that suggest that "on whose behalf" should be read so broadly as to include any person or entity that stands to benefit from an unsolicited advertisement being sent. As Plaintiff does not point this Court to any authority that would support such a broad reading, the Court instead adopts a plain reading of the FCC's pronouncements and regulations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

      6.    Whether Plaintiff Sufficiently States a Claim Against Defendant TQM

      According to Plaintiff, Defendant TQM is the registrant of the web site advertised and promoted in the Fax. (SAC, at 9:10-11). More importantly, Plaintiff alleges that "services of Premiere in connection with the sending of the Fax were billed to TQM." (Id. at 11-12). Interpreting this allegation in the light most favorable to Plaintiff, as this Court must do on a Rule 12(b)(6) Motion, this Court finds that Plaintiff alleges sufficient facts to raise a right to relief above the speculative level. See Twombly, 127 S. Ct. at 1965.

      As noted above, the Court refuses to extend liability under the TCPA absent an allegation that a defendant was somehow involved in the decision to send an unsolicited advertisement, *i.e.*, the Court refuses to extend liability under the TCPA absent an allegation that an advertisement was literally sent "on behalf" of a defendant. A reasonable inference can be drawn that if Defendant TQM was billed for the Fax, that the Fax was, in some form or another, sent on Defendant TQM's behalf. A complaint must allege sufficient facts to raise a right to relief above a speculative level. Twombly, 127 S. Ct. at 1965. This Court finds that the SAC accomplishes this task and, by extension, that Plaintiff sufficiently states a claim against Defendant TQM.

      For these reasons, then, the Court DENIES Defendant's Motion to Dismiss as it relates to Defendant TQM.

      7.    Whether Plaintiff Sufficiently States a Claim Against Defendants AFD, QF, and CLG

      According to Plaintiff, Defendants AFD, QF, and CLG paid or contributed monies to Defendants Trusts that was

> used to formulate and execute the advertising campaign that resulted in the sending of the Fax; to prepare the Fax, including its content; to purchase and pay for the Fax List; and to pay for the services of Premiere and that CLG gave the National Trust, Regional Trust, QAFT and/or the other Quizno's Defendants broad discretion to use such monies for such purposes and authorized the same.

(SAC, at ¶¶ 16, 20, 21). As has been the case many times in the SAC, Plaintiff fails to allege that Defendants were aware that the Fax was being created or transmitted. Rather,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-5849 PSG (PLAx) | Date | July 31, 2007 |
| Title | Gibson & Company Insurance Brokers, Inc. v. The Quizno's Corp., et al. | | |

the allegations only show that these defendants were aware that they were contributing to a general advertising campaign. Absent a factual allegation that these defendants were aware that the Fax was being created or transmitted, this Court cannot conclude that Plaintiff sufficiently pleads that the Fax was sent on Defendants AFD, QF, and CLG's behalf, much less that they created the Fax. While this Court recognizes that detailed factual allegations are unnecessary to survive a Rule 12(b)(6) Motion, a complaint must nevertheless allege sufficient facts to raise a right to relief above a speculative level. Twombly, 127 S. Ct. at 1965. In this circumstance, the SAC fails to do so.

For these reasons, then, the Court GRANTS Defendant's Motion to Dismiss as it relates to Defendants AFD, QF, and CLG, without prejudice

V. CONCLUSION

For the foregoing reasons, the Court hereby:

(1) the Court GRANTS the Quizno's Defendants' Motion to Dismiss as it relates to Defendants Trusts and TQFC, with prejudice;

(2) the Court GRANTS the Quizno's Defendants' Motion to Dismiss as it relates to Defendants QAFT in its individual capacity, QFA, QF II, QIP, AFD, QF, and CLG, without prejudice; and,

(3) the Court DENIES the Quizno's Defendants' Motion to Dismiss as it relates to Defendants TQSC II, QAFT in its representative capacity, QCE, and TQM.

Plaintiff is ordered to file an Amended Complaint within fifteen (15) days.

Initials of Preparer